JOHN P. DOUSMAN v. RICHARD G. PETERS AND FINLEY
MORRISON.

*Sale—Principal and agent—Ratification—Estoppel.*

The question involved in this case is the liability of defendants to
plaintiff for supplies shipped to defendants' logger upon his
order, which plaintiff claims was authorized by one of the
defendants, or, if not, that he afterwards ratified it. The cor-
respondence between the parties was put in evidence, and is
set forth in full in the opinion, from which, and all of the
facts in the case, the court left it to the jury to determine
whether or not plaintiff elected to hold the logger and release
defendants; which action by the trial court is held to have
been fully justified, and the judgment in favor of the plaint-
iff is affirmed.

Error to Menominee. (Steere, J.) Argued April 8
and 9, 1891. Decided May 8, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The
facts are stated in the opinion.

*B. J. Brown,* for appellants.

*W. H. Phillips,* for plaintiff.

MORSE, J. This action is in *assumpsit* to recover for a
quantity of oats and beans and the sacks wherein they
were shipped, alleged to have been sold and delivered by
the plaintiff to the defendants.

The plaintiff resides at De Pere, Wis., and the defend-
ants, in April, 1888, were partners under the firm name
of Peters & Morrison, then largely engaged in the lumber
business, their business office being at Menominee, Mich.
At that time one Ed. Sargent, of Oconto, Wis., had a
contract with defendants in his wife's name, E. L. Sar-

gent, for getting in logs. The supplies for Sargent's teams were to be furnished by defendants and delivered to Sargent at the Watersmeet Lumber Company's store, but to be paid for by Sargent at 10 per cent. above cost.

Defendants had large dealings with plaintiff in purchasing supplies. In February, 1888, the plaintiff received an order for oats from defendants, and shipped them to Sargent's camp by their orders. The order was direct from defendants and in their name, and plaintiff was directed to send the shipping bill to them, and a duplicate to E. L. Sargent. In April, 1888, plaintiff received the following order:

"WATERSMEET, March 26, 1888.
"JOHN P. DOUSMAN,
"De Pere, Wis.
"*Dear Sir:* Shipped you by freight the 24th inst.. bags for oats. Please send me one car-load of best white oats and one bag of beans. If there are not enough sacks, send some more.
"Yours truly, E. L. SARGENT,
"Watersmeet, Mich.
"Send bill to Peters & Morrison, Menominee, Mich., and duplicate to me here, prepaying freight."

The bags referred to are those in which the oats ordered by defendants in February were shipped. The last order was filled, and the original bill sent to defendants as follows:

"DE PERE, WIS., Apr. 7, '88.
"Peters & Morrison, Menominee.
"Bought of JOHN P. DOUSMAN, Merchant Miller.
"Car, No. 2455, C. & N. W. Terms, Cash.

| | | | |
|---|---|---|---|
| 750 bu. oats, 106 blps., $ 35.. | | ..$262 | 50 |
| 3.40 " beans, 1 " 2 55 | | 9 | 35 |
| 107 " 10 | | 10 | 70 |
| Freight prepaid on 24,000 lbs. at 18 cts | | 43 | 20 |
| | | $325 | 75." |

The bill was received at Peters & Morrison's office, in Menominee, who, on April 10, 1888, wrote plaintiff as follows:

"MENOMINEE, MICH., April 10, 1888.
"JNO. P. DOUSMAN,
      "De Pere, Wis.

" *Dear Sir:* We are in receipt of invoice of oats and beans April 7, shipped E. L. Sargent. As this was ordered without our knowledge, will you be kind enough to send us your authority for shipping this above-named order, that we may be able to determine where the error is? Our camps are all broken, and it was our intention to furnish Mr. Sargent with what oats he might need from the last car we ordered of you to Iron River.

      "Yours resp'y,      PETERS & MORRISON,
                                    "Pr. Smith."

A duplicate of the bill was sent to E. L. Sargent, as requested in the order. On the receipt of defendants' letter, the plaintiff sent the original order to defendants in the following letter:

"DE PERE, Wis., April 11, 1888.
"MESSRS. PETERS & MORRISON,
                    "Menominee.

" *Gents:* Inclosed find letter ordering the car oats. Supposed, of course, that it was all right, or should not have sent it. As previous car was sent-direct to them, thought there was no possible mistake.

      "Very resp'y,      JOHN P. DOUSMAN."

To this letter plaintiff received no reply. When the account was due,—May 26, 1888,—plaintiff sent statement of account to defendants, and received the following reply:

"OFFICE OF PETERS & MORRISON,          ⎫
  "Manufacturers of Lumber and Shingles,  ⎬
      "MENOMINEE, MICH, May 28, 1888.     ⎭

"JNO. P. DOUSMAN, ESQ.,
              "De Pere, Wis.

"*Dear Sir:* We are in receipt of your statements 26th inst., for $325.75. We have given you no authority to charge this bill to our account. The goods were ordered by E. L. Sargent, without our knowledge or consent, and after he had quit working for us. However, we will do

what we can to collect this account for you next season, when we expect Sargent will log for us again.

"Yours truly,    PETERS & MORRISON,
"ED. D."

Plaintiff then wrote as follows:

"DE PERE, WIS., May 28, 1888.
"MESSRS. PETERS & MORRISON,
"Menominee.

"*Dear Sirs:* Yours of Saturday at hand. Wish you had advised us earlier of this, but guess E. L. Sargent will have to pay at once, as it looks to me as if he obtained these goods on false pretenses. Send me at once the letter of E. L. Sargent ordering these goods, and also please give me his address, as I shall, of course, have to look to him for payment, if you do not indorse the transaction.

"Very resp'y,    JNO. P. DOUSMAN."

The letter was returned by defendants with the following letter:

"MENOMINEE, MICH., May 29, 1888.
"MR. J. P. DOUSMAN, ESQ.,
De Pere, Wis.

"*Dear Sir:* Yours of the 28th inst. is rec'd. We inclose letter from Sargent. We think it would be a useless expense for you to take action against Sargent at present. We will see him, and if he can give security till next winter we will pay the bill for him.

"Yours truly,    PETERS & MORRISON,
"ED. D."

[Over.] "We consider Mr. Sargent an honest man, and we are sure he will pay all he owes. When he ordered the goods he no doubt thought he had more money coming from us, but the past winter was a hard one on jobbers, and instead of making anything he came out in debt.

"Yrs.,    P. & M.,
"D."

Plaintiff replied:

"DE PERE, WIS., May 30, 1888.
"MESSRS. PETERS & MORRISON,
"Menominee.

"*Gents:* Yours of May 29 at hand. You do not give

us Mr. Sargent's address. I am sorry for his bad luck, and shall do nothing to injure him or his, but of course must establish the fact of some one owing me the amount of the car. No doubt can accommodate him with all time wanted to help him out.

"Yours, etc.,   JOHN P. DOUSMAN."

The defendants answered, stating that letters addressed to Sargent at Oconto, Wis., or Watersmeet, Mich., would reach him; and then, when Mr. Morrison returned, in a few days, they would bring the matter to his attention. No further correspondence passed between the parties until September, 1888, when plaintiff wrote defendants the following letter, and received the following reply:

"DE PERE, WIS., Sept. 17, 1888.
"MESSRS. PETERS & MORRISON,
   "Menominee:
"Gents: As yet I have no remittance from E. L. Sargent or yourself for car oats shipped April 7. As you wrote to me about that tim that you could take care of the account in September,  now ask if you will do so. I am in need of the amount, and would like to get it closed up. Amount is $325.75. Your early reply will oblige,

"Yours, etc,,   JOHN D. DOUSMAN."

Reply:

"MENOMINEE, MICH., Sept. 17, 1888.
"JNO. P. DOUSMAN, Esq.,
   "De Pere, Wis.:
"Dear Sir: Your favor relative E. L. Sargent account is received. Mr. Sargent is not now in our employ, or will not be this season. He has left his camp, and the greater part of the oats are there,—in what condition we cannot say. If you will send some one to look at them and determine the value of them, we will take what there is left,—in condition for use,—and pay you for them, but under existing circumstances we cannot pay Sargent's bill, as he had no authority to order goods for our acct.

"Yours truly,   PETERS & MORRISON,
     "Ed. D.
"Please quote us price on hay and oats delivered at Florence, Wis., and Iron River, Mich."

Plaintiff also wrote defendants as follows:

"DE PERE, WIS., Sept. 25, 1888.
"MESSRS. PETERS & MORRISON,
"Menominee:
"*Gents:* Your favor denying account for car oats, April 7, to E. L. Sargent, was received. I find there is 300 to 400 bush. of the oats in the camp; and it seems to me, as long as these oats were used to feed your teams, and that, having Mr. Morrison's promise to settle the account, you can hardly object to so doing. Mr. Sargent also states that the oats were ordered by direction of Mr. Morrison, and that it was fully understood that Peters & Morrison were to pay the account at that time, and again later. Under these circumstances, I cannot see where there in any justice in refusing to pay me. What is your final answer in this matter?
"Yours, etc., JOHN P. DOUSMAN.'

Defendants replied as follows:

"MENOMINEE, MICH., Sept. 27, 1888.
"JNO. P. DOUSMAN, Esq.,
"De Pere, Wis.
"*Dear Sir:* We have yours of the 25th inst., relative to oats shipped E. L. Sargent in Apr. last. At the time we received bill for these oats our Mr. Morrison was absent in the woods, so we could do nothing till he returned, though we thought it strange at the time that they should have been ordered. When Mr. M. returned we wrote you at once the facts in the case. You can see yourself the wisdom (?) of ordering a car of oats just at the time camp was breaking up. As to the order being sent by direction of Mr. M., we cannot say, but we think it is not so He is absent just now, and when he returns we will let him decide the matter.
"Yours truly, PETERS & MORRISON,
"D."

This closed the correspondence.

Mr. Sargent testified on behalf of the plaintiff that one of the defendants, Mr. Morrison, the managing man of the firm, told one of the men at the camp to send the order, which the man did; that the supplies were received at his camp in pursuance of said order. The order was

then introduced in evidence against the objection of the defendants. It was properly admitted.

The theory of the plaintiff upon the trial was in accordance with the testimony of Sargent that Mr. Morrison authorized the sending of the order, and also that, if he did not authorize the sending of it in the first place, he afterwards ratified it. There was testimony tending to support both theories, and the court did not err in his charge in relation thereto.

There was also introduced testimony tending to show that the defendants, at the breaking up of Sargent's camp in April, took possession of some of Sargent's teams under a chattel mortgage or bill of sale, and fed a portion of such oats to said teams. The balance left at the camp after such feeding—342 bushels—were taken by the Interior Lumber Company, of which the defendant Morrison was manager, and the plaintiff was paid for them. He credited the amount of such payment upon defendant's account. There was also testimony that Mr. Morrison, in the summer of 1888, said he would pay for the oats.

The court instructed the jury correctly that if they believed that Morrison authorized the sending of the order the plaintiff was entitled to recover; and that, if they found that he did not authorize it to be sent in the first place, then it was for them to determine whether it had been ratified by the subsequent conduct of the defendants; and that if, after receiving the original order upon which the oats were forwarded to Sargent in reply to their first letter, the defendants waited an unreasonable time without denying the claim against them, and during that time the rights of the plaintiff were prejudiced by the delay, then they could not afterwards deny their liability, but would be held to have ratified it. He stated also to the jury that the subsequent

promise of Mr. Morrison to pay for the oats could not bind him and make the defendants liable for the debt of another, but the fact of the promise could be used in determining whether or not defendants had ratified the giving of the order by Sargent.

The defendants' counsel requested the court to instruct the jury to find a verdict for the defendants. It is claimed that this should have been done, because by the letter of May 28, 1888, the plaintiff withdrew his claim against defendants, and thereafter looked to Sargent for the same. The circuit judge left it to the jury to determine from the whole correspondence and all the facts in the case whether or not the plaintiff elected to hold Sargent and release defendants from any liability for the oats. We are satisfied not only that this was a question for the jury to decide, but also that the evidence is overwhelming that no such election was made. When the defendants replied to this letter they informed plaintiff that it would be useless to proceed against Sargent, and held out the hope to him that they would arrange it so as to pay the bill themselves, and from that date the plaintiff looked only to the defendants for payment, as is evident from the correspondence and all the testimony.

The testimony as to what was done with the oats, and what became of them, was competent and material. It bore upon both the issues of authority in sending the order and of a subsequent ratification of it by defendants.

The counsel for the defendants also claims that there is nothing in the case to justify the charge of the court that if they found that defendants delayed the denial of plaintiff's account for an unreasonable time to the prejudice of plaintiff they would be estopped from afterwards denying such account. We think the court was justified in this instruction. When plaintiff sent the original order to defendants in pursuance of their request in their first

letter, and received no reply from April 11 until May 28, and then not until he had sent to them a statement of account due, he was prejudiced in his rights. He was justified in supposing that the order was satisfactory to them, and during this time the oats were being fed to defendants' teams. Had they informed him at once that they repudiated the order, he could have taken steps to reclaim his goods before they were destroyed. It is evident from the whole case that the defendants ought to pay for the oats, and we find no error in the record.

The judgment is affirmed.

CHAMPLIN, C. J., McGRATH and LONG, JJ., concurred. GRANT, J., did not sit.